Okay, the first argued case this morning is No. 18-2082, Bedgear, LLC v. Fredman Bros. Furniture Co. Mr. Marshall. May it please the Court, Lee Marshall on behalf of Bedgear. The Board here took the Rasmussen reference in its disclosure of a highly porous 3D textile and held that that expressly anticipated every variety of open-cell construction claimed in the gusset patents. Is your argument twofold? You have both claim construction arguments as well as you think that even if the Board's construction were correct, you don't think Rasmussen should be read so broadly as to meet all the claim limitations? That's correct, and we think the Board's ultimate holding was legal error for three reasons. You've basically summarized them, yes. So let me get right into the claim construction. The claim construction ignored the file history here. The examiner had rejected the disjunctive definition of open-cell construction and required that the specific structures that defines that open-cell construction be expressly recited in the claims. And the patent owner is also— So what—just back up a moment. What do you understand the claim construction issue to be? There's a question of whether this should be read to mean 3D spacer fabrics or just 3D fabrics. Is that the claim construction issue we're talking about? No, the claim construction issue, Your Honor, is whether in the definition that's provided in the patent book, open-cell construction, which is in the disjunctive, which says a construction having overall porosity greater than the inherent porosity of the constituent material or one that has inherently higher porosity, whether when the applicant amended the claims to include the specific structures because the examiner refused to read that definition into the claims, whether the applicant was essentially choosing with those amendments, those structure-based claim amendments, one part of the definition or the other, but not both. And I think it's very clear, Your Honor— I'm not understanding. The claims have these specific structures in there. That's part of the claims. Those are limitations in the claims. There's no dispute about that, right? Right. So what's the other contention? Do you think Claim 11 is your best example for a limitation that's inconsistent? You just anticipated what I was going to say. The aperture claim is really the best one, and that's Claim 11 of the 134 patent, and it talks about the open-cell constructions being formed by apertures defined in the base material, said apertures being larger than any pores inherently defined in the base material. That reflects a choice that, with the open-cell construction, it's essentially adopting the first category of the disjunctive. But what the board did here was say, no, that can be anticipated by a prior reference that shows a construction inherently having a higher porosity. And we believe—and the district court, by the way, agreed with us in an opinion that is 180 degrees from what the board did. We believe that the claim language here with the aperture claim, Claim 11, clearly reflects a choice that the open-cell construction was a construction having overall porosity greater than the inherent porosity of the constituent material. So, in other words, let me ask you this. Does that require us, if the board had the construction incorrect, particularly on Claim 11, for example, that requires us to vacate and remand? Yes. Identify what the correct construction is, and then it's for the board to decide, in the first instance, make that factual determination on anticipation in light of the proper claim construction. Is that right? I agree, Your Honor. Yes. So, was it proposed to amend the claims before the board to reflect the problem that seemed to be bothering the board, was that the claims as written could be read more broadly than what you're saying is the correct construction? That proposal was not made, Your Honor. The amendments were made in original prosecution in response to the examiner saying, I'm not going to read this disjunctive definition into the claims. You have to pick the structure. And so that's what we did, and instead of adopting a claim construction that would reflect that choice, the board effectively unwound that choice. I'm sorry. I'm not following this. The structure that was the subject of the amendment was written into the claims,  so what difference does this conjunctive, disjunctive, whatever claim construction make to the interpretation of the claims? Because the board held that all of these claims could be anticipated by a construction simply having inherently a higher porosity, which is the second part of this disjunctive definition. I don't think that's true. I think what the board said was that we find these structures to be present in Rasmussen. Didn't they say that? In part, they did, Your Honor, and let me address that because that's really the second main issue that we have. You know, the board is not permitted to fill in gaps in missing limitations in the prior art, and we think that's precisely what the board said. Missing in the prior art is a substantial evidence question, right? It is, Your Honor, but even so, let me take another example. Let me take the 3D spacer fabric example. There are claims that specifically require that structure, 3D spacer fabric, and there's no dispute at all that Rasmussen does not mention a spacer fabric, much less a 3D one. And so the question is, well, how did the board fill in that gap? Was the board permitted to fill in that gap? Was there substantial evidence under the appropriate anticipation law to fill in that gap? And now the GlideAway expert, the Fredman Brothers expert, admitted that Rasmussen does not specifically mention a spacer fabric, and she testified that a 3D spacer fabric could have been one of the fabrics a person skilled in the art would have chosen, that it's the best one for the job and it's the most suitable. Now, the board relied on this testimony and said that 3D spacer fabric is appropriate for a ventilated pillow. Appropriate. It doesn't matter whether it's suitable, appropriate, or even the best one for the job. And we cited the NIDIC case, Your Honor, for the proposition that the board is not permitted to fill in missing limitations even when, quote, a skilled artisan would immediately envision them. That's essentially what the board did here. The board relied on testimony from the other side's expert, saying this is the example that I would envision that would be used for a 3D textile, this 3D spacer fabric not mentioned, but this is what I would envision would be the most suitable and the most appropriate. And the board then just used that and filled it in. The gap filling was so clear here, Your Honor, that opposing counsel had to resort at the hearing to suggest that Rasmussen may have used the term 3D textile instead of 3D spacer fabric because she was from Denmark and the usage might have varied. That's how blatant the gap filling was here. So the evidence, I mean, really, if porous 3D textiles anticipates 3D spacer fabrics, it anticipates fabrics that have apertures, if it anticipates interlaced strands of fabrics, then there's effectively no claim differentiation here, Your Honor. And we think the board was not permitted to fill in these gaps in the way they did. Can I focus you again on Claim 11 for a minute? Because as I understand it, the board found that that claim, which requires that the apertures be larger than any pores inherently defined in the base material, that's the claim language. And the board said that the apertures could include pores that are already inherently in the base material. And so that's where the claim, that's, I understand what your alleged claim construction error is, is that their construction is inconsistent with the claim language. How does that then apply to the determination of anticipation? How did the board interpret the claim in order to find that Rasmussen meets the claim? So the board did two things, Your Honor. The board said that, first, that it can be anticipated by this highly porous material, one inherently having a higher porosity. And then the second thing the board said was, well, if you look microscopically at the fabric, there's going to be, because it's a breathable fabric, there's going to be some space between the particular fibers of yarn that make up that fabric. And that those spaces would be larger than any pores on the fabric, on the fiber strands themselves. And so the board looked at this from this completely, I don't know, hypothetical microscopic level that really makes no sense when you look at the claim, which says that the apertures must be larger than any pores inherently defined in the base material. The base material is the fabric. It is not the microscopic look at the fibers that may or may not have pores, Your Honor. So that's the aspect from a pure anticipation perspective, even if you agree with the board's claim construction, where we believe that the board completely went astray. I think the third thing I'd like to talk about is the common basic legal principle that a genus does not anticipate a claimed species within the genus. We cited a lot of cases for this. It's well known. And I think the best example on this one is claim 22 of the 332 patent, which is the mesh configuration claims. And the light-away expert expressly admitted that you can have 3D textiles that do not include a mesh. She said, I would not say every breathable fabric has a mesh. You can have a 3D textile that doesn't include a mesh. A mesh is a breathable fabric, but it is not the only breathable fabric. In other words, it's a possible species within the genus of 3D textiles or even porous 3D textiles. I don't think you'll get very far as a generalization. You can't just come in and pluck out something from a genus and say, no, this is mine. You have to do more. You have to show some unusual properties. So this is a burden that, as far as I could tell, the board felt you hadn't met. So we claimed our claims go to particular species or subgenuses, and they used the disclosure in Rasmussen of a genus to anticipate those specific species. And our argument is based on, for example, the Adafina case, which says as well. As long as I'm not sure that's what the board did, I thought the board found that these structures were disclosed in Rasmussen. Well, let me take, like I said, with the example of mesh, the GlideAway expert repeatedly admitted that there's lots and lots and lots of 3D fabrics. Mesh is one kind of them, one type of possible 3D fabric. But just the fact that 3D fabrics could include 3D fabrics that are meshes does not mean that the disclosure of a 3D fabric anticipates the specific claiming of a mesh configuration. But I thought what they said was that these structures were present in Rasmussen, not that the Rasmussen disclosed a genus, but these specific structures were disclosed in Rasmussen, right? In some instances, they did make that determination. With the mesh claims, they did not. What they said- Why don't you identify a specific page in your appendix that you think provides the best- Sure, yes, I can, Your Honor. This was in pages, it was A60 to 61, where the board said that 2D and 3D textiles can include strands defining a mesh configuration. And they cited to sort of a long portion of our patent owner's response to the institution, the only one of which talks about mesh, says, and this is at A543, that for 3D spacer fabrics, the two fabric layers can be the same or different. That is mesh or solid. The fact that they can be meshes doesn't mean that they always are meshes. The fact that an apple is a fruit doesn't mean that all fruits are apples. So what the board did was rely on this statement that it can include meshes to say, therefore, 3D textiles anticipates a mesh. And that's where the genus-species argument comes in. And unless there are further questions, I'd like to reserve for rebuttal. Yes, we will. Let's hear from the other side. Thank you. Mr. Mudd. Thank you, Your Honor. May it please the Court. Jason Mudd for Appellee Fredman Brothers Furniture Company. The purported invention of the gusset patents is directed to using a highly porous gusset between the top and bottom panels of a pillow to provide for lateral ventilation and cooling. And it does so using a gusset that's more porous in the top and bottom. This is precisely what the Rasmussen reference teaches. What about the specific embodiments? I mean, that's where the argument is directed, I think, that the prior art discloses one generic description as opposed to describing the various different embodiments recited in the various claims. Well, the Board's findings of fact were that the embodiments were disclosed, that the structures recited in the claims were disclosed and present in the Rasmussen reference. Right. And substantial evidence supports that finding. No, that's not the issue. I mean, it would be helpful if you would explain why that finding needs to stand. Sure. So I can start with that or I can address the claim construction first. I'll go to that first. So, for example, interlaced space-to-part strands, the Board found that a highly porous 3D textile material as described in Rasmussen that provides significant ventilation and airflow. Textiles are made of strands. There are openings that provide for that airflow. Therefore, there are space-to-part and interlaced strands in that material. Same thing with mesh. Was it largely based on expert testimony explaining what you just said? Basically explaining that saying that any of these kinds of materials in Rasmussen would meet this claim limitation? I'm just trying to understand what the evidence is. Yes, that certainly helps support it. And the evidence actually came from both sides' experts that porosity is created from spacing and strands. Textiles are made of strands. Thus, a highly porous 3D textile has space-to-part strands. And those strands are interlaced because we have a three-dimensional material that's held together. It doesn't fall apart. So those structures are present in highly porous 3D textile material. And I understand the claim construction argument there is that in the preferred embodiment that is disclosed in the patent specification, those strands are not inherent in the material, but rather it's something that's formed. So I actually disagree with that. When you read the specification, it does not suggest that space-to-part or interlaced strands can't be inherent. Do I have the claim construction argument? Have I presented the claim construction argument correctly? So our understanding of the claim construction argument is that the patents provide an express definition with essentially two kinds of porosity, a construction having overall porosity being greater than the inherent porosity of a constituent material or inherently having high porosity. So textiles are man-made. They're manufactured, right? So either the porosity can be inherent from how the material is originally made, or the porosity can result from added porosity after manufacture. So what Bedgear is proposing through its claim construction is to limit it to only encompassing porosity that's added after manufacture, right? That's why their constructions repeatedly reference that this porosity is greater than a constituent material. Notably, the claims don't even recite a constituent material. That concept is injected into the claims through Bedgear's claim construction. And they rely on the specification, and you were going to explain why you disagree with their reliance on the specification. Yes, and the specification, when it describes interlaced or space-to-part strands, it doesn't say that those can't be inherent as originally manufactured, right? I mean, textiles are made up of strands, right? And a highly porous 3D textile that's manufactured will have space-to-part strands as a result of how it's initially manufactured. There's no suggestion that these spacings have to be introduced after original manufacture of the material. Is the embodiment as disclosed, though? It might not say that you can't make it inherent in the material. But in the embodiment disclosed, is it formed in the material after the material is originally manufactured? It doesn't say that. It doesn't specify with regard to the space-to-part or interlaced strands whether that is an arrangement that is after original manufacture or during original manufacture. Are you relying on a particular column? Yes, it's column two of the patent. And I'm using the 332 patent, and that's column two at about starting about line 20. And so it says, with reference to figure three, the gusset 20 may be defined by a plurality of interlaced or space-to-part strands arranged randomly or in various patterns. So it doesn't say whether that arrangement is a result of original manufacture or if somehow there's a manipulation or modification that's made after original manufacture. So even the embodiments don't have this distinction of after manufacture versus before manufacture. What about claim 11? Yeah, with regard to claim 11, that's a great question. So with regard to claim 11, the way that the specification describes those apertures is that they can either be formed during manufacture or after manufacture. What about the plain claim language? The same thing with the plain claim language. So the plain claim language refers to apertures being larger than any pores inherently defined in said base material. That's the exact same language that the specification uses. The specification states at column two, line 38, apertures 32 may be defined in the base material with the apertures 32 defining the open cells of the gusset. The apertures 32 are larger in size than any pores that may be inherently defined in the base material. The apertures may be formed during manufacture of the base material or formed after manufacture. So those same apertures 32 that are described as being larger than inherent pores can be formed either before manufacture or after manufacture. Now what this is getting at is that when you get down to the base fiber level, you'll have microscopic pores, right, that can be inherent to any textile. What the patent is talking about is we have meaningful apertures that provide significant airflow and cooling. This is the same thing that Rasmussen teaches. Rasmussen doesn't rely on inherent pores that can exist down at the base fiber level. It relies on highly porous material that provides significant airflow and cooling just like the gusset patents do. And so the board's finding that the apertures larger than inherent pores is supported by substantial evidence. I'd like to address the file history since that was the lead point raised by Bedgear in its argument. So importantly, as we explained in the briefing, the file history had nothing to do with the two parts of the definition of open-cell construction. It had nothing to do with suggesting that the claims would be limited to either porosity... Can I back up for a minute? Yes. So just going back to claim 11. So it's your view that if it's formed during manufacture of the base material, that means it's... Yes. I believe that's correct, Your Honor. Yes. Okay. That doesn't make a lot of sense to me. It's possible that if the pores could be formed during manufacture, but that still means that those pores are larger than those that are inherently in the base material, regardless of when they're formed in the base material. Does that make sense? So the claim's using two different terms, apertures and pores, right? So the inherent pores, as the Board found, are what exists at the base fiber level, right? The apertures are where the air flows, the meaningful air flow that provides significant ventilation, right? And those are larger than the inherent pores that exist down at the base fiber level. Another thing important to note about the claim language is the claim language doesn't actually even affirmatively claim or require the inherent pores, right? It's just a comparison that's used. So the claim is simply saying that there have to be apertures larger than inherent pores down at the base fiber level, and that was found to be present in the Rasmussen reference by the Board. It says what? It said apertures being larger than any pores inherently defined in said base material, right? So regardless... That's right. Regardless of whether pores exist. So if any pores do exist at the base fiber level, it should be larger than those. And what's the import of that in your view? The import is that you have meaningful openings that provide substantial air flow, and that's larger than... And they have to be formed in the material. They're not inherent in the material, right? I don't... The patent and the claims don't distinguish between formed and inherent, right? So something can be formed in a material as originally manufactured and be inherent in that material. What about where it says said open cell construction is formed by apertures defined in said base material, said apertures being larger than any pores inherently defined in said base material? Yes. So it does require that there be apertures that are formed, right? Not in the usage of the patents. The patents... I'm looking at Claim 11. Yes. It's not a method step of forming after manufacture. I understand. They can be formed at any point in time. Yes, but you agree that the apertures have to be larger than pores inherently defined in the base material, right? Any pores, if they exist, right. Yes. Okay. Yes. That's correct. Is the idea that a particular method of manufacture may have larger pores than would necessarily be the case during some other method of manufacture? Well, the issue is that the apertures are where the air flows. It's meaningful air flow, right, that provides for significant ventilation and cooling. And that's something more than just any inherent microscopic pores that might exist in any textile material. In the strands. I'm sorry, Your Honor? In the strands. Yes, in the strands themselves, or as the board found, in the base fibers. Yes. So I'd like to touch briefly on the file history. So the file history had nothing to do with these two parts of the definition of open-cell construction. Recall that, as I discussed, we're either talking about added porosity after initial manufacture or inherent porosity that results from initial manufacture. And there's nothing in the file history where the examiner was requiring the applicant to limit to one of the two types of porosity or somehow narrow that definition. In fact, these open-cell construction phrases were already present in the dependent claims. And they were indicated to be allowable if written in independent form. So all that happened was claim language that was already there was allowed. But doesn't that narrow the breadth of the claims in a manner contradicted by the way the board interpreted them? That would be correct if the claim language suggested that those strands were added after manufacture or that this is added to a constituent material. But as the board noted, nothing in the plain claim language requires the spaced-apart strands to be added after manufacture. So the dependent claims, as originally written, were agnostic to whether it's at initial manufacture or after manufacture. And thus, an amendment that cancels the independent claim and rewrites that dependent in independent form does not somehow limit it to just after manufacture. Is this an issue that's critical in the infringement context? I don't know. That's a good question, Your Honor. I don't believe that's a record or an issue in this proceeding. Well, if this is a dispositive issue from the practical viewpoint, that would be of interest. Yeah, I'm not aware offhand, Your Honor, how it relates to a potential infringement issue. But here we know Bedgear is trying to read in this after manufacture requirement into the claim language to try to distinguish Rasmussen. So they're saying that the board should have construed the claims the way the examiner did in allowing them and on which they relied in their subsequent proceedings? No, I would disagree. The examiner was not construing the claims in the manner suggested by Bedgear. He construed them to be allowable with these changes. That was enough. He confirmed they were allowable regardless of whether it was before or after initial manufacture. So there was no amendment to limit to after manufacture. Well, my question was, was that an issue, whether it was before or after? If not, it shouldn't prejudice this applicant. Not during examination, no. The issue of before or after initial manufacture was not at issue in the file history. Okay. And then I'd like to touch on, so Bedgear noted the district court claim construction, which was raised for the first time in the reply brief. I'll just note that the district court there was applying the Phillips standard. These IPRs are governed by the broadest reasonable interpretation because these predated the patent office's switch in its claim construction standard. Then with regard to the genus species issue raised by counsel, this is not a genus species case. As Judge Dyke noted, the board found the structures were disclosed, not that a genus was taught that would potentially anticipate a species. So this is not a genus species case. No, it's more a matter of construing the claims in accordance with the limitations of the species. Yes, I think that's one way of looking at it, Your Honor. I see I'm out of time. If there are not any further questions, that's all I have. Any more questions? No. Any more questions? Thank you, Mr. Budge. Thank you, Your Honors. Judge Newman, the claim construction issue is central to the infringement case, and it was one of the few issues that was actually disputed on claim construction before the district court. If you read that opinion, you will understand exactly. You probably already have. That is exactly what our position. The district court held that the definition of open-saw construction plainly describes alternatives of open-saw construction, that the claims can clearly be categorized by whether they are directed to embodiments matching either the first or the second part of the definition, and that these specific open-saw constructions, which were put into the claims, were added during prosecution after the examiner rejected reading the broad disjunctive definition in. And here we have the board doing the exact opposite and saying, I'm going to read in this entire disjunctive definition into these claims, broaden them way out, and say they can be anticipated by a material simply inherently having a higher porosity. And we think that that is the essence of the error. Now, does the board – let me turn to the genus-species thing. Does the board explicitly use the term genus and species? No. But what the board says is that a 3D textile can be a mesh, and therefore, 3D textile anticipates mesh. It's the exact same problem, Your Honor. The disclosure of a genus in a prior art reference cannot disclose a specific species of that genus. And we cited a bunch of cases for that proposition. I think, you know, the other point I'd like to address is the forming point, which the language form is formed by appears in Claims 1 and Claim 11, Judge, as you point out. And it's quite clear when you look at those embodiments, and these are the interlaced strand and the aperture embodiments that are shown in Figures 3 and Figure 4, of the patent and described in Column 2, it's quite clear that what's happening there is that the fabric itself – not how the fabric is made, but the fabric itself is being interlaced, or the fabric itself has apertures. It's not the – in the making of the fabric, apertures are not created. It's that the apertures are not co-equal to the pores that exist when you weave a fabric together. And if you look at the description in the spec of interlacing, it's talking about the strands maybe of various materials, including, for example, polyester. So it is not the strands that are fibers. It is the strands that are the base material. And it goes on, and it talks about how the strands can be stitched together or fused together or tied together or fastened together. These are not strands that are woven together to make the fabric, and it's very clear from the specification and the embodiments that the examiner was trying to claim those specific embodiments and that this incredibly broad disclosure of porous 3D textiles was used to anticipate all of these very specific constructions. Any more questions? Any more questions? Thank you very much. Thank you. The case is taken under submission. The court will stand in recess for about 10 minutes. All rise. The court now stands in recess.